**Robert and Suzanne WALSH**
vs.
**HOLYOKE MUTUAL INSURANCE COMPANY**

**No. 8708**

Appellate Division of the
District Court Department
Northern District
Commonwealth of Massachusetts

**October 27, 1982**

**David I. Cohen, Esq.,** counsel for plaintiff

**William Tick, Esq.,** counsel for defendant

## OPINION

**Banks, J.** This is an action in contract brought by the plaintiffs against the defendant insurance company for compensation for damages to their property suffered in a storm of February, 1978. It is not at issue that the plaintiffs' property in Winthrop, Massachusetts was, at the time of the storm, insured against wind damage by the defendant; nor that some damage caused by that storm was properly compensable by the defendant.

The plaintiffs filed a claim under the policy soon after the storm. A considerable controversy thereafter arose between the parties as to the amount of damage and the costs of repair for which the defendant was liable under the policy. The differences between the parties are indicated by the fact that the plaintiffs' expert appraiser testified at trial to damages amounting to $6,632.01, while the defendant's appraiser placed the amount of loss at $1,076.00. Negotiations between the parties prior to the commencement of suit on February 6, 1980 included a request by the plaintiffs in August, 1979 for arbitration pursuant to G.L. c. 175, s. 99, to which request the defendant did not accede. The negotiations also involved a letter from the plaintiffs, which was received by the defendant on January 21, 1980, setting forth both an itemized statement of loss prepared by the plaintiffs' expert, and a

receipted bill on a letterhead of Design Systems Development in the amount of $8,478.00. This receipted bill was not only appended to plaintiffs' complaint, but also specifically alleged in paragraph 18 of the complaint as follows:

"18. That the plaintiffs have paid out-of-pocket expenses for the repair of their dwelling at 284 River Road in the sum of $8,478 in accordance with the bill, dated May 22, 1979, said bill is hereto annexed . . .

WHEREFORE, plaintiffs demand judgment against the defendant in the sum of $8,478 with interest and cost."

The alleged paid bill in question was handwritten on a letterhead bearing the title "Design Systems Development," and stated:

" May 22, 1978
Bill for work done at 284 Rivert Rd. to make premises livable and weathertight incl. rebuild porch patch foundation, rebuild chimney, roofing and other misc. work as per agreement.

Total Due $8,478.00
Paid in full
5/24/78
Frank R. DiMattio
Thank you"

At trial there was evidence tending to show that: The plaintiffs paid various amounts of money to various tradesmen for repairs to their property subsequent to February, 1978, including the sum of $4,500.00 to Mr. DiMattio. There was no evidence that Design Systems Development or Mr. DiMattio actually received the sum of $8,478.00 from the plaintiffs. Plaintiff Robert Walsh testified that he did not intend to convey the impression, when he submitted the receipted bill to the defendant, that Design Systems Development had in fact been paid $8,478.00. Rather, he intended to represent that the money paid to all persons for work on the plaintiffs' home totaled $8,478.00. There was evidence, however, that plaintiff Robert Walsh

stated, in a sworn deposition of September 18, 1980, that he had paid Design Systems Development the sum of $8,478.00.

The trial court entered judgment for the defendant upon the following subsidiary findings of fact:

"The plaintiffs paid substantial sums for work performed on their home, some of which would have been covered by the Defendant's policy. However, the Plaintiff, Robert Walsh, submitted to the Defendant a purported receipted bill for $8,400 signed by a Mr. DiMattio on the letterhead of Design Systems Development in support of the plaintiffs' claim for work allegedly performed on the Plaintiffs' home. The submission to the Defendant of the aforesaid $8,400 receipted bill was an intentional and material misrepresentation by the Plaintiff Robert Walsh since the Plaintiffs never paid Design Systems Development or a Mr. Frank DiMattio $8,400. This constituted a material breach of the cooperation clause of the aforesaid policy."

The plaintiffs thereafter sought postjudgment relief in the form of a Dist/Mun. Cts. R. Civ. P. 52(b) Motion for Amendment of or Additional Findings; a Dist./Mun. Cts. R. Civ. P. 59 Motion for a New Trial; and a Dist./Mun. Cts. R. Civ. P. 60(b) Motion for Relief from Judgment. The trial court denied said motions, but entered amended findings which included the following:

"That there was a very substantial good faith difference of opinion between the plaintiffs and defendant as to the amount of damage to the plaintiffs' home that was covered by the plaintiffs' policy with the defendant;

"That the plaintiffs offered to submit the matter to arbitration, but the defendant refused in August, 1979;

"That a purported receipted bill for $8,400.00 for work allegedly performed on the plaintiffs' home signed by a Mr. DiMattio on the letterhead of Design Systems Development was subsequently submitted to the defendant in support of the plaintiffs' claim on January 21, 1980;

"That although the plaintiffs paid substantial sums to repair the damage to the plaintiffs' home, some of which was covered by the plaintiffs' policy with the defendant, the submission to the defendant of the aforesaid receipted bill constituted an intentional and material misrepresentation by the plaintiffs since the plaintiffs never paid Design Systems Development or a Mr. DiMattio $8400.00;

"That this constituted a material breach of the cooperation clause of the aforesaid policy."

The plaintiffs are presently before this Division on a charge of error in the trial court's disposition of thirteen requests for rulings of law and two requests for findings of fact submitted by the plaintiffs; and in the court's denial of the plaintiffs' motions for postjudgment relief.

1. The plaintiffs' initial argument for reversal of the trial court's judgment for the defendant is that the court's consideration of the question of plaintiffs' violation of the cooperation clause was improper in view of the defendant's failure to specifically and affirmatively plead fraud and misrepresentation in its answer. Dist./Mun. Cts. R. Civ. P. 8 and 9(b); **Aerostatic Eng. Corp. v. Szczawinski,** 1 Mass. App. Ct. 141, 143 (1973); **Barrett Assoc., Inc., v. Aronson,** 346 Mass. 150, 152 (1963); **Kerrigan v. Fortunato,** 304 Mass. 617, 620 (1939). We find that the trial court acted properly in considering the question of the plaintiffs' fraud and misrepresentation even though the relevant clause of the policy of insurance was not specifically pleaded by the defendant as a separate affirmative defense.

The defendant's answer alleged as a second affirmative defense that the plaintiffs' claim of loss was "excluded from coverage by the terms and conditions of the policy and, therefore, the plaintiffs may not recover in this action." One of the salient "terms and conditions" of the policy was the following provision:

"Concealment, fraud.

"This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or the interests of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

In view of the defendant's second affirmative defense and the plaintiff's obvious knowledge of the falsity of the receipted bill they both submitted to defendant and advanced in their complaint, it is difficult to comprehend their claim of purported surprise at the defendant's assertion of fraud herein. In the present case, where knowledge of the breach of a term or condition of the policy was peculiarly and deliberately within the sole possession of the plaintiffs, it cannot be said that the plaintiffs did not receive that notice which is the fundamental purpose of pleadings under the procedural rules. See **Charbonnier v. Amico,** 367 Mass. 146, 152 (1975).

Moreover, Dist./Mun. Cts. R. Civ. P. 15(b) specifically provides that:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the

evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.''

See generally, **Kagan v. Levenson,** 334 Mass. 100, 106 (1956). The implied consent, or at least awareness, of the plaintiffs to the trial court deliberations on the issue of fraud is evident in the plaintiffs' requested rulings numbers 9 and 10. In any event, the plaintiffs' breach of the Concealment and Fraud clause of the parties' contract would appear to have been pleaded in the defendant's second affirmative defense.

2. The plaintiffs' second charge of error is in the trial court's finding that the submission of the fraudulent receipted bill to the defendant was an intentional and material misrepresentation within the meaning of the insurance policy. Specifically, the plaintiffs contend that the mere presentation of this bill to their insurer did not alone, and was not designed to, affect the parties' negotiations or contractual relationship. The issues of materiality and intention were questions of fact for the trial court. **In-Towne Restaur. Corp. v. Aetna Casualty & Surety Co.,** Mass. App. Ct. Adv. Sh. (1980) 713, 716-717 (material fact); **Galotti v. United States Trust Co.,** 335 Mass. 496, 501 (1957). The court's findings on these issues were in part premised on the oral testimony of the parties. Giving due weight to the trial justice's position as arbiter of witness credibility, **Astravaras v. Petronis,** 361 Mass. 366, 367 (1972); **Hamilton v. Hamilton,** 325 Mass. 278, 279 (1950); we determine that the court's finding on these issues was not ''clearly erroneous'' and must stand on this appeal. The trial court could have properly determined herein that more was operative than simply an incorrect statement of loss which alone would not establish an intent to deceive. **Sullivan v. John Hancock Mut. Life Ins. Co.,** 342 Mass. 649, 656 (1961). The plaintiff's submission of the receipted bill at issue to the defendant was conduct which could properly be found to ''manifest an intent to obtain for the plaintiff an unfair advantage, ''**Krantz v. John Hancock Mutual Life Ins. Co.,** 335 Mass. 703, 707 (1957); to wit, insurance compensation in excess of the actual loss sustained.

> ''A valuation may be so exaggerated and excessive as to constitute a deliberate and wilful overvaluation; and its use to influence the judgment of another who was under an obligation to pay in accordance with actual value would necessarily imply an intent to deceive as the natural and proximate consequence of such conduct.''

**Gechijian v. Richmond Ins. Co.,** 305 Mass. 132, 137 (1940).

The plaintiffs' apparent contention that their submission of the bill was not material because it did not ultimately affect the parties' negotiations is totally devoid of merit. A misrepresentation is not rendered immaterial simply because the declarant fails in his deception or has no great confidence in its chance for success. There is nothing in a Fraud and Concealment clause

> ''which gives countenance to a construction that would permit the insured to play fast and loose with the truth so long as he did not intend ultimately to obtain a sum which in the nature of things could hardly be anything other than his own estimate of the amount of the loss.''

**Gechijian v. Richmond Ins. Co.,** 298 Mass. 487 (1937).

3. The plaintiffs also argue that the defendant's refusal to proceed to arbitration or failure to settle this matter short of trial excused or vitiated what was found to be an intentional misrepresentation on their part. The plaintiffs' reliance on the reciprocity or mutuality of obligations under insurance contract ''cooperation clauses'' is immaterial herein. Although the court

and parties herein refer to the clause at issue as a "cooperation clause," said clause is in fact denominated in the parties' policy as a provision governing Concealment and Fraud. Said provision permits the invalidation of a policy where there has been intentional and material fraud on the part of the insured. In any event, it may be noted that the "intentional furnishing of false information of a material nature either before or at trial is a breach of a cooperation clause." **Lombardi v. Lumbermens Mutual Casualty Co.**, 361 Mass. 310, 311 (1972).

Moreover, the question raised by the plaintiffs as to the defendant's purported bad faith was one of fact for the trial court. The reported evidence amply sustains the trial court's express determination that there existed "a very substantial good faith difference of opinion between the plaintiffs and defendant as to the amount of damage to the plaintiff's home that was covered by the plaintiffs' policy with the defendant." The arbitration clause in the policy was an option or condition precedent to suit which, by its express terms, could have been waived by either party. **Molea v. Aetna Ins. Co.**, 326 Mass. 542, 547 (1950). The trial court was not required to equate the defendant's refusal to proceed to arbitration with bad faith.

4. There was no error in the trial court's disposition of either the plaintiffs' requested rulings or motions for post-judgment relief. The latter was addressed to the sound discretion of the trial justice, and no abuse of that discretion has been demonstrated.

**Report dismissed.**

**Elliott T. Cowdrey, P.J.**
**James B. Tiffany, J.**
**Richard L. Banks, J.**
This certifies that this is the opinion of the Appellate Division in this cause.
**Suzanne Hurley**
**Clerk, Appellate Division**