SISSY HARRINGTON-MCGILL *vs.* OLD MOTHER HUBBARD DOG FOOD Co., INC. July 9, 1986. *Practice, Civil*, Trial jury-waived, Findings by judge. *Consumer Protection Act*, Unfair act or practice. *Trade Secret*.

These are cross appeals from a judgment for the plaintiff in the amount of $52.50, plus an attorney's fee for $7,500. Because the judge decided issues (violations of G. L. c. 93A, § 11) which were not pleaded or tried by the parties, we reverse and remand for further proceedings in the Superior Court.

Four months after negotiations broke down for the manufacture of the plaintiff's herbal dog food by the defendant for the East Coast market, the defendant began to develop its own herbal dog food and later put it on the market. The plaintiff brought this action, claiming that she had given the defendant her formula and her customer list in confidence. She claimed that the defendant "is manufacturing and distributing [her] product under its [the defendant's] name making use of the plaintiff's formula and customer list," that the plaintiff's dog food bags supplied to the defendant during the negotiations "were used by the defendant without right," and that the defendant "misrepresented to the plaintiff its intention to manufacture and distribute a product similar to the plaintiff's in order to induce her to disclose her formula and customer list." The plaintiff sought damages and also sought relief under c. 93A.

After a jury-waived trial, the judge made the following findings and rulings. The plaintiff's formula was entitled to trade secret protection. Such protection, however, did not apply to the ingredients used because, under the laws of most States, the ingredients had to be listed on each package of dog food. What was protected was the proportion of each ingredient to the

others in the mix. See *Peggy Lawton Kitchens, Inc.* v. *Hogan,* 18 Mass. App. Ct. 937, 939 (1984).

As for the nonherbal portion of the defendant's dog food, there was no copying — the ingredients were not the same. The herbs used by the plaintiff were listed on her bags. Although the defendant used the herbs in the same proportions as the plaintiff, the judge found that the plaintiff had never given the defendant her herb formula. "[T]he proportion of herbs to the entire mix was disclosed only in the aggregate and the particular proportion of each herb to the others was never disclosed to Mother Hubbard." In sum, the defendant had not used confidential material in producing its dog food.

The customer list supplied by the plaintiff contained the names of kennels and individual customers. The defendant's business was such that it did not sell directly to kennels or individual dog owners. Thus, the plaintiff's theory of liability as to the use of her list was not sustained.

The judge also found that at the time the defendant's president told the plaintiff that he did not intend to compete with her "these assurances were made in good faith". Only after negotiations concluded in August, 1979, did the defendant's president "toy" with the idea of manufacturing its own dog food with a "health" or "herbal" dimension. Because of these findings, the plaintiff's misrepresentation theory also dissolved.[1]

Despite these findings against the plaintiff, the judge found liability under G. L. c. 93A on the basis of "two infractions of our trade secret laws — one major and one minor". The major one was that the defendant learned from proprietary market data supplied in confidence by the plaintiff of the "viability of the market" for herbal flavored dog food. Its president appreciated that she had a "gimmick." While his company did not sell directly to her customers, the president could "from his own experience" estimate the market for herbal dog food "from his memory of the customer list" and could "recall the cost analysis" he had made to realize that "this was a 'high profit' item."

The judge ruled that for this violation damages were to be measured by the loss to the plaintiff of lead time in penetrating the market. These "headstart" damages could not, however, be determined because the evidence was "too vague and speculative" to support a finding as to the actual damages for the loss of such lead time. He awarded nominal damages.

The minor infraction found by the judge was that the defendant should have purchased the plaintiff's product on the market to obtain the ingredient list and should not have taken the list from the sample bag obtained during

---

[1] At trial, the plaintiff also claimed damages for the state in which the herbs and bags were returned to her. The judge found that "even if the claim under G. L. c. 93A, § 11, were to be construed broadly enough" to encompass the claims of negligence or conversion, it was not clear who was reponsible for the sloppy handling of the herbs and bags, and, therefore, no recovery was in order.

the course of negotiations. It would have cost the defendant $17.50 to purchase one of these bags. Since the judge found it appropriate to treble this amount, he awarded the plaintiff damages of $52.50. He also found the plaintiff entitled to attorney's fees of $7,500, in light of the defendant's violation of G. L. c. 93A, § 11.

The defendant appeals on the ground that the bases on which the judge found the defendant liable were neither pleaded nor tried by the parties and were not supported by the evidence. We agree that the theory of appropriation of market data delivered in confidence was not tried by the parties and was a theory developed sua sponte by the judge. As indicated earlier, the case was pleaded and tried on allegations of appropriation of the plaintiff's secret formula and customer list and misrepresentation. The defendant did not have the opportunity to prepare for and defend against the theory of recovery posited by the judge.

Unless a theory of recovery is disclosed in the pleadings or is tried by the express or implied consent of the parties, a court may not base its decision thereon. See Mass.R.Civ.P. 15(b), 365 Mass. 761 (1974); *National Medical Care, Inc.* v. *Zigelbaum,* 18 Mass. App. Ct. 570, 579 (1984); *Armstrong Cork Co.* v. *Lyons,* 366 F.2d 206, 208-210 (8th Cir. 1966); *Jimenez* v. *Tuna Vessel Granada,* 652 F.2d 415, 420-421 (5th Cir. 1981); *Doubleday & Co.* v. *Curtis,* 763 F.2d 495, 502-503 (2d Cir. 1985). To find implied consent where the pleadings are not amended, it must "[a]t least . . . appear that the parties understood [that] the evidence [was] aimed at the unpleaded issue." *MBI Motor Co.* v. *Lotus/East, Inc.,* 506 F.2d 709, 711 (6th Cir. 1974). As pointed out in *Messina* v. *Scheft,* 20 Mass. App. Ct. 945, 946 (1985), "Serious problems may be created whenever a judge bases a decision on an issue that is not before the court. A party may be effectively foreclosed from presenting any evidence on the very issue that is dispositive of the case." For the foregoing reason, we hold that the judge erred in finding for the plaintiff on the theory of misappropriation of market data.

We also have doubts whether the minor infraction (i.e. use of the bag for determining the ingredients) was properly found by the judge in view of the pleadings and the focus of the trial. Paragraph 17 of the complaint, the only allegation regarding the bags, reads: "The bags and names used by the plaintiff are copyrighted under the laws of the United States and were used by the defendant without right and against the rights of the plaintiff."

Having found error in the procedure followed by the judge, we have to determine the remedy. The defendant seeks reversal and the entry of judgment in its favor. We think it more appropriate to remand for trial on the theories found by the judge.

In *National Medical Care, Inc.* v. *Zigelbaum,* 18 Mass. App. Ct. at 579, and again in *Messina* v. *Scheft,* 20 Mass. App. Ct. at 946, we suggested that, where a judge is troubled by an issue not perceived by the parties, he should

"notify counsel of his concerns and permit counsel to present evidence on the question which the judge perceives to be dispositive." Thus, had the judge followed what we said was the correct course, both parties would have had an opportunity to try the issues on which the judge based his decision. We think that the same procedure should be followed in this case after remand and note that, in similar circumstances, remands for further proceedings have been ordered. See e.g., *Messina* v. *Scheft*, 20 Mass. App. Ct. at 946; *MBI Motor Co.* v. *Lotus/East, Inc.*, 506 F.2d at 713; *Jiminez* v. *Tuna Vessel Granada*, 652 F.2d at 422 n.10. Compare *Cioffe* v. *Morris*, 676 F.2d 539, 542-543 (11th Cir. 1982) (where the trial judge himself decided to disallow the recovery he had previously granted), and *Doubleday & Co.* v. *Curtis*, 763 F.2d at 503 (where the trial judge based his decision on a theory which would be waived if not pleaded).

Accordingly, the judgment is reversed, and the matter is remanded to give the parties an opportunity to litigate the two theories posited by the judge.[2] The issues previously tried and determined against the plaintiff are foreclosed.

*So ordered.*

*Mark G. Cerel* for the defendant.
*Robert R. White* for the plaintiff.

---

[2] The plaintiff's cross-appeal relates only to damages. Our disposition of the defendant's appeal will permit the plaintiff to introduce evidence on that question.

As the nature and extent of any liability and the appropriate measure of damages are better determined on a full factual record, we do not review the theories of the trial judge on either liability or damages.