COLDWELL BANKER/HUNNEMAN *vs.* MALKA LIFSHITZ
SHOSTACK.

No. 03-P-1572.

Suffolk. September 13, 2004. - December 7, 2004.

Present: PERRETTA, GRASSO, & DOERFER, JJ.

*Real Property,* Sale. *Contract,* Sale of real estate. *Broker,* Commission.

In a dispute involving a real estate broker seeking to recover a commission
under a brokerage agreement with a homeowner, a Superior Court judge
properly granted summary judgment in favor of the defendant homeowner,
where the brokerage agreement provided as a precondition to entitlement
to a commission that a buyer be produced who was ready, willing, and
able to purchase on terms specified by the homeowner, and where the
summary judgment record demonstrated that the prospective buyers were
not willing to enter into a purchase and sale agreement without significantly
modifying a material term specified by the homeowner in the offer to
purchase [638-640], and where the buyers failed to agree to a purchase and
sale agreement that conformed to all material terms before the expiration
of the time specified in the offer to purchase [640-641].

CIVIL ACTION commenced in the Boston Municipal Court
Department on April 14, 2002.

After removal to the Superior Court Department, the case
was heard by *Patrick F. Brady,* J., on a motion for summary
judgment.

*Thomas I. Elkind* (*Stephen D. Riden* with him) for the
plaintiff.

*Howard A. Pinta* for the defendant.

DOERFER, J. The plaintiff, Coldwell Banker/Hunneman, a real
estate broker, sought in this action to recover a commission
under a contract with the defendant, Malka Lifshitz Shostack[1]
(also referred to as the seller), who was the owner of a home in

---

[1]Her husband, Kenneth Shostack, was appointed her "attorney in fact" to
act for her when she was unavailable.

Brookline (property). The plaintiff appeals from the allowance by a judge of the Superior Court of the defendant's motion for summary judgment.

*Facts.* The facts material to the issues raised in this appeal were undisputed and set forth in the summary judgment materials of the parties. The plaintiff and defendant executed a real estate brokerage agreement which provided that a five percent commission would be due the plaintiff if "a buyer is procured ready, willing, and able to buy said property, or any part thereof: (a) in accordance with the price, terms and conditions of this Agreement (even if the Seller refuses to accept such an offer, for any reason); or (b) upon such other price, terms or conditions as shall be acceptable to the Seller; whether or not such transaction proceeds." The plaintiff secured an offer from a Mr. and Mrs. Jaffe (also referred to as the buyers). A written offer to purchase (OTP) was signed by the Jaffes on April 20, 2001, which, at the insistence of the seller, included a clause relating to the use of the garage on the property by the seller for storage:[2]

> "seller retains the right to use the garage for storage for up to 60 days after the closing."

The OTP also provided that the buyers and the seller were to enter into a purchase and sale agreement (P&S) on or before 9:00 P.M. on April 25, 2001, which could be in "any form substantially similar" to the Standard Form Purchase and Sale Agreement recommended by the Greater Boston Real Estate Board, and "which, when executed[,] shall be the agreement between [the buyers and the seller]." The OTP stated that time was of the essence.

On April 22, 2001, the plaintiff sent to the buyers' attorney by facsimile transmission a draft P&S which contained the precise language set out in the OTP clause (reproduced above) relating to storage. On April 24, 2001, the buyers' attorney sent a list of proposed changes to this P&S to the seller's attorney,

---

[2]The OTP also described the property, set forth the purchase price, the deposit, the date the OTP expired if not accepted, the manner of acceptance, the nature of the title to be conveyed, what items of personal property were included and excluded from the sale, and the time and place of delivery of the deed.

including the modification of the language of the OTP clause relating to storage. The proposed modification added the following: "Said right to use the garage is for 'dead' storage only. Seller can store existing items in the garage for up to 60 days. Seller is not allowed access to garage during this period until vacating the storage. After removing all storage Seller shall leave the garage in broom clean condition. This paragraph shall survive delivery of the deed."

The seller's attorney informed the buyers' attorney on April 24, 2001, that the proposed language restricting access to the garage and changing the concept of "storage" to "dead storage" was not acceptable to the seller. The seller had already moved to Israel, and her husband was in the process of moving and could not accept limited access to their property on a "dead storage" basis.

No further reaction to the storage clause was made by the buyers by the time the OTP expired, 9:00 P.M. on April 25, 2001. There was no discussion between the seller and the buyers regarding extending the deadline for entering into a P&S. On April 26, 2001, the buyers' attorney sent the seller's attorney new draft language concerning storage. The new clause read, "[t]he seller retains the right to use the garage for up to 60 days after the passing of papers, for storage of personal papers and records. The Seller is aware of Buyer's intention to change all locks. The Seller retains the right to remove said papers and records during normal business hours with 24 hour notice to Buyer." The seller did not respond. On April 27, 2001, a P&S executed by the buyers and containing the new storage clause was sent to the seller's attorney. The seller did not execute this new proposed P&S. There was no evidence that the revised storage clause was acceptable to the seller. In fact, in correspondence from the seller's attorney some weeks after the deadline expired, the seller indicated that the further revised storage clause was not acceptable as it limited storage to papers and records and put restrictions on access to the garage.

No P&S was executed between the seller and the buyers. The buyers made a demand on the seller to complete the transaction. The controversy between them was settled without the conveyance of the property.

*Analysis.* As provided in *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. 622, 629 (1975), quoting from *Ellsworth Dobbs, Inc.* v. *Johnson*, 50 N.J. 528, 551 (1967), "[w]hen a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. . . . [I]f the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid."

The seller is obliged to pay a commission to the broker only if a buyer is found who is ready, willing, and able to purchase the property on the terms specified by the seller. *Bonin* v. *Chestnut Hill Towers Realty Corp.*, 392 Mass. 58, 65 (1984). Furthermore, even if the seller is responsible for the failure to complete the transaction, no commission is due unless the seller has entered into a binding contract with the prospective buyer. See *Capezzuto* v. *John Hancock Mut. Life Ins. Co.*, 394 Mass. 399, 403 (1985). But if the seller acts in bad faith to thwart the sale, a commission is due. *Id.* at 403-404. See *Hunneman & Co.* v. *LoPresti*, 394 Mass. 406, 409 (1985); *id.* at 410 n.1 (Wilkins, J., concurring).

The benefits to the seller of the protections of *Tristram's Landing* can be waived by agreement between the broker and seller, but such agreements are "to be scrutinized carefully. If not fairly made, such agreements may be unconscionable or against public policy." *Tristram's Landing*, 367 Mass. at 630. Any provision in a brokerage agreement varying the rule "must be made . . . with enough specificity to alert the seller to the situations in which he can be liable for a broker's commission even if a sale is not consummated." *Currier* v. *Kosinski*, 24 Mass. App. Ct. 106, 107 (1987).

Here the brokerage agreement provided that a commission would be due even if the transaction were not completed. However, the brokerage agreement also provided as a precondition to entitlement to a commission that a buyer be produced who was ready, willing, and able to purchase on terms specified

by the seller. The record shows that this did not happen because the buyers were not willing to enter into a P&S that included terms specified by the seller in the OTP. This undermined a necessary condition for the plaintiff's right to a commission. *Tristram's Landing*, 367 Mass. at 629.

The brokerage agreement in this case did not waive the requirement of *Capezzuto* that a binding contract of sale be entered into between the buyers and the seller in order for the plaintiff to be entitled to a commission. Although the P&S mentioned in the OTP was never executed, there are circumstances in which an OTP signed by both the seller and the buyer can constitute a valid agreement for the purchase and sale of the property in question. *McCarthy* v. *Tobin*, 429 Mass. 84, 86-88 (1999). In order for the OTP to serve as a binding contract the facts must indicate an intent on the part of the seller and the buyer to be bound by the terms of the OTP. *Id.* at 87-88. In *McCarthy*, the fact that the seller and the buyer agreed upon all of the essential terms of the transaction in the OTP reflected their intent to be bound by the OTP. *Id.* at 88. But here, as in *Germagian* v. *Berrini*, 60 Mass. App. Ct. 456 (2004), when the buyers received back the executed OTP from the seller, their conduct indicated that they did not intend the OTP to be a binding contract because there was no agreement on a material term. *Id.* at 460 (without agreement on essential terms, buyer did not intend OTP to be binding). Rather, they insisted on negotiating conditions under which the garage could be used for storage instead of incorporating the unadorned clause, "seller retains the right to use the garage for storage for up to 60 days after the closing," specified in the OTP.

If the storage clause were not material, *McCarthy* might control. But the summary judgment record makes it clear that the storage clause was material to the seller and her husband because of their particular situation. They needed storage for a period of time because of their ongoing, drawn-out relocation to another country. There was no indication in the record that the seller needed such storage only for books and papers, or that the seller did not need access to the garage after the closing, or that the seller's access could be restricted.

The plaintiff argues that the storage clause was not material

or, alternatively, that the buyers' proposed modifications of the storage clause did not alter the fundamental agreement of the buyers and the seller in the OTP relating to storage. "Where intention is clearly stated or evident, the analytical focus generally turns to whether the inchoate or unresolved aspects of the parties' agreement are 'essential' or 'material.' 'It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement. . . . It is not required that all terms of the agreement be precisely specified, and the presence of undefined or unspecified terms will not necessarily preclude the formation of a binding contract.' " *Hunneman Real Estate Corp.* v. *Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 421 (2002), quoting from *Situation Mgmt. Sys., Inc.* v. *Malouf, Inc.*, 430 Mass. 875, 878 (2000).

"Ordinarily the question whether a contract has been made is one of fact. If the evidence consists only of writings, or is uncontradicted, the question is for the court; otherwise it is for the jury." *David J. Tierney, Jr., Inc.* v. *T. Wellington Carpets, Inc.*, 8 Mass. App. Ct. 237, 239 (1979), quoting from *Bresky* v. *Rosenberg*, 256 Mass. 66, 75 (1926).

The summary judgment materials show that the storage clause was material as matter of law. Furthermore, the proposals of the buyers were not mere clarifications of inchoate aspects of the storage clause.

*Expiration of the offer.* Time was of the essence and the buyers were obliged to agree to a P&S that conformed to the material terms of the OTP by 9:00 P.M. on April 25, 2001. See *McCarthy*, 429 Mass. at 88 (courts hold parties to deadlines they impose upon themselves); *Owen* v. *Kessler*, 56 Mass. App. Ct. 466, 469 (2002) (time of the essence clause will be strictly enforced). This they did not do. The plaintiff argues that the seller and the buyers by their conduct agreed to extend the time for executing a P&S. *Id.* at 470 (although "[c]onditions and clauses of a contract may be waived, either expressly or by words and conduct," the court found no evidence indicating seller's waiver of "time is of the essence" clause). The plaintiff's characterization of the seller's conduct as a continua-

tion of dealing is overdrawn. The seller's rejection of the alteration of the storage clause was clear and unequivocal and engendered no timely counterproposal by the buyers. By the time a new proposal was forthcoming the time had expired. The seller did nothing before the expiration of the time specified in the OTP to indicate that she would be willing to consider any further proposals from the buyers.

The most that the plaintiff can point to is a letter from the seller's attorney in response to a demand by the buyers to proceed to a closing. The seller's attorney said on May 31, 2001, that he was unable to obtain his client's approval for the late-blooming offer since she was unavailable. In so stating, however, some weeks after the time had expired, he did not admit that negotiations were still ongoing. Thus, contrary to the plaintiff's claim, there was no dispute of fact or contradiction between the seller's attorney's letter and his later affidavit.

*Judgment affirmed.*