Brennan, J.
Berkshire-Westwood Graphics Group, Inc. (“Berkshire”) commenced this suit to recover for Robert Davidson’s (“Davidson”) alleged fraud and G.L.c. 93A violations in failing to pay for goods sold and delivered to D.M. Products Company, Inc. (“DM”). After a jury-waived trial, the court found in Berkshire’s favor. Davidson filed this appeal of the trial court’s denial of his Mass. R Civ. P, Rule 41(b) (2) motions for involuntary dismissal, disposition of his requests for rulings of law, and findings of fact in Berkshire’s favor.
Berkshire and DM were competitors in the graphic arts supply business. In January, 2004, Berkshire’s president, Michael Sullivan (“Sullivan”), and DM’s president, Robert Davidson (“Davidson”), began negotiating Berkshire’s acquisition of DM and its hiring of Davidson as a sales representative. Sullivan and Davidson signed a nondisclosure agreement on January 12, 2004, which stated that “by signing this Agreement, neither party is committed to pursuing the Proposed Transaction and if either party hereto determines ... that it does not wish to proceed ..., it need only advise the other party of that decision.” For the next few months, Sullivan and Davidson exchanged “term sheets” to iron out the terms of the proposed acquisition/employment agreement.
During the course of the negotiations, DM’s deteriorating financial condition prevented it from purchasing needed inventory from vendors that would no longer extend it credit. To avoid losing additional customers whose orders it could not fill, DM purchased a number of products from Berkshire on credit. Although Berkshire had a policy against extending credit beyond thirty days past due or $2,500.00, it permitted DM to continue to place orders until the end of April, 2004, when DM’s overdue balance reached $17,339.14.
DM placed its final order with Berkshire on April 30, 2004. Two days later, Davidson began negotiating with Oliver Tripp Company (‘Tripp”) and, on May 5, 2005, contracted with Tripp for its acquisition of DM and its hiring of Davidson. That same day, Davidson informed its creditors, including Berkshire, that DM had ceased operations and that it had retained Rampart Associates (“Rampart”) to administer its debts. DM’s accountant, Harry R. Paine, Jr. (“Paine”), personally informed Sullivan of the DM-Tripp transaction by telephone.
DM failed to pay for the goods sold to it by Berkshire. The corporation was placed in involuntary bankruptcy in June, 2004. Berkshire was not among the unsecured creditors who filed the petition.
On June 4, 2004, Berkshire filed this suit against Davidson for fraud and unfair and deceptive acts in violation of G.L.c. 93A, §11. The fraud count was predicated *179 on Berkshire’s allegation that it had extended so much credit to DM because of Davidson’s representation that the debt would be offset by amounts owed to DM or Davidson under the contemplated acquisition/employment contract. Davidson counterclaimed for abuse of process, alleging that Berkshire was suing Davidson because DM, now bankrupt, was protected by an automatic stay of any proceedings against it
At trial, Berkshire did not pursue the fraud allegations set forth in its complaint It claimed, instead, that Davidson had orally promised to guarantee payment of the corporation’s debt. Sullivan testified that Davidson “guaranteed the payment; he personally guaranteed the payment hoping that the bank would give it to him; and, he further assured me that if for some reason it wasn’t paid, I could take the money out of the deal at the end.” Davidson denied making any misrepresentations of material fact to Berkshire, or personally guaranteeing DM’s debt. At the close of Berkshire’s evidence and again at the end of trial, Davidson moved for involuntary dismissal on the grounds that Berkshire had failed to plead the alleged oral guaranty in its complaint and that the promise was, in any event, unenforceable under the Statute of Frauds.
The trial court denied Davidson’s Rule 41(b) (2) involuntary dismissal motions, ruled on his Mass. R. Civ. P., Rule 64A requests, and made written findings of fact. The court ordered judgment for Berkshire on both its complaint counts for fraud and G.L. c. 93A violations and Davidson’s abuse of process counterclaim.[1] The trial judge found, inter alia, that “Davidson... induced [Berkshire] to provide goods on credit, misrepresented his company’s status and personally guaranteed the debt.” The court further found that Davidson’s personal guaranty was enforceable under the Statute of Frauds; and, Davidson, as president of DM, violated G.L.c. 93A by “knowingly and intentionally inducting] Berkshire to provide product to D.M. at a time when D.M. had no ability to pay for the product by personally guarant[ee]ing the payment when he had no intention of complying.”
1. It is clear from the trial judge’s written findings that she elected to decide Davidson’s Rule 41(b) (2) motions in her capacity as the trier of fact, see Devito v. Cellular Mobile Communications, Inc., 1993 Mass. App. Div. 48, 49-50, “weighting] the evidence and resolv[ing] all questions of credibility, ambiguity, and contradiction in reaching a decision.” Ryan, Elliott & Co. v. Leggat, McCall & Werner, Inc., 8 Mass. App. Ct. 686, 689 (1979). Findings of fact will not be disturbed on appeal unless they are unsupported by the evidence adduced at trial, or are tainted by error of law. Sullivan v. Ross, 2002 Mass. App. Div. 60, 62.
Berkshire’s recovery on Count I of its complaint for fraud required proof of a knowing or intentional misrepresentation by Davidson of a material fact, designed to induce action by Berkshire, which reasonably relied upon the misrepresentation to its detriment. Equipment & Sys. for Indus., Inc. v. Northmeadows Constr. Co., 59 Mass. App. Ct. 931 (2003). The trial judge found that Davidson had “induced the plaintiff to provide goods on credit,” and “misrepresented his company’s financial status.” There is no evidence in the record before us, however, of any affirmative misrepresentation by Davidson. At best, Berkshire proved only that Davidson failed to disclose, expressly, the extent of DM’s poor financial condition. But silence does not constitute fraud in the absence of a duty to speak. Urman v. South Boston Sav. Bank, 424 Mass. 165, 168 (1997). Nor does liability for intentional non *180 disclosure attach when the parties are sophisticated businessmen, dealing at arm’s length without any fiduciary relationship. See Davidson v. General Motors Corp., 57 Mass. App. Ct. 637, 643 (2003). Because it is understood that “when parties bargain, each tries to get the best from the trade [, and] [t]hey are in an adversary, not a fiduciary, relationship,” Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 405 (1991), rev’d on other grounds, 412 Mass. 703 (1992), Davidson had no specific duty to disclose DM’s deteriorating financial condition and, thus, made no fraudulent nondisclosure.
Further, even assuming that Davidson’s alleged nondisclosure of its financial status could have been properly found to constitute an actionable misrepresentation, Berkshire failed to prove that its claimed reliance on that nondisclosure was reasonable. Indeed, Sullivan testified on cross-examination that he knew, throughout the negotiations, that DM was in “fairly dire financial straits,” that DM had provided Berkshire with financial information and documents, and that he knew that DM’s sales figures continued to fall. Reliance is unreasonable as a matter of law when the representation in question is “palpably false.” Yorke v. Taylor, 332 Mass. 368, 374 (1955); Stigman v. Nickerson Enters., Inc., 2000 Mass. App. Div. 223, 225. See also RESTATEMENT (Second) of Torts §541 (1976) (‘The recipient of a fraudulent statement is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.”). Here, because Sullivan knew of DM’s financial distress, he could not have justifiably relied on Davidson’s nondisclosure of that fact as a basis for electing to extend continuing credit to DM.
The trial court found Davidson liable for fraud on the additional ground that he had personally guaranteed payment for the goods purchased by DM with no intention of honoring that promise. The record is clear, however, that the complaint did not allege any oral guaranty by Davidson. Rule 9(b) mandates that the alleged circumstances underlying a claim for fraud must be “stated with particularity.” See generally United States Funding, Inc. of America v. Bank of Boston Corp., 28 Mass. App. Ct. 404, 407 (1990). Further, Berkshire’s new claim of an oral guaranty was not tried with the assent of both parties. Generally, “[ujnless a theory of recovery is disclosed in the pleadings or is tried by express or implied consent of the parties, a court may not base its decision thereon.” Harrington-McGill v. Old Mother Hubbard Dog Food Co., 22 Mass. App. Ct. 966, 968 (1986), citing Mass. R. Civ. P., Rule 15(b). There is implied consent to litigate an issue “if there is no objection to the introduction of evidence on the unpleaded issue, as long as the nonobjecting party was fairly apprised that the evidence went to the unpleaded issue.” Wolfe v. Ford Motor Co., 6 Mass. App. Ct. 346, 355 (1978), quoting Niedland v. United States, 338 F.2d 254, 258 (3d Cir. 1964). Davidson’s counsel expressly objected in his opening statement as well as in his argument on the motions for involuntary dismissal to any new claim at trial by Berkshire of an oral guaranty, and specifically argued that such claim was never pleaded. This was not a case in which the defendant stood “by silently while evidence [was] being admitted and then claim [ed] later that no relief [could] be given because the matter was not pled.”[2] Niedland, supra at 259.
Count I of Berkshire’s complaint actually alleged only that Davidson was liable for fraud by misrepresenting that any unpaid balance owed by DM for products supplied by Berkshire could be deducted from whatever monies that would be paid to Davidson or DM in the event the parties’ acquisition/employment transac *181 tion was completed. As stated in the nondisclosure agreement, however, neither party bound itself to continue negotiations, much less to complete the transaction. Again, even if Davidson had actually made the conditional promise of payment alleged in the complaint, the parties’ uncertain contract negotiations would have prevented any reasonable reliance by Berkshire on that promise.
2. The trial judge’s judgment in favor of Berkshire on its G.L.c. 93A claim was based solely on the court’s finding of the oral guaranty, which was never pleaded. As the evidence did not permit a finding for Berkshire on the fraud claim that was actually and properly before the trial court, Berkshire’s G.L.c. 93A claim must also fail. Macoviak v. Chase Home Mtge. Corp., 40 Mass. App. Ct. 755, 760 (1996).
Judgment for the plaintiff is vacated, and this action is returned to the Springfield Division of the District Court Department for the entry of judgment in favor of the defendant.
So ordered.

 On Count I, the court awarded Berkshire $15,983.04 (the amount of DM’s overdue balance, less a $1,356.10 credit for a returned product). On Count II, the court awarded G.L.c. 93A damages of $20,983.04, plus interest, costs and attorney’s fees, but limited Berkshire to a single recovery.
As Davidson has not briefed his failed abuse of process counterclaim on this appeal, it is waived. Dist./Mun. Cts. R. A. D. A., Rule 16(a) (1).

 If the alleged oral guaranty had been properly pleaded and tried, we conclude that the guaranty would have been enforceable, as the trial judge ruled, under the “leading object or purpose” exception to the Statute of Frauds, G.L.c. 259, §1, Second. See Central Ceilings, Inc. v. National Amusements, Inc., 70 Mass. App. Ct. 172, 177-178 (2007); Barboza v. Liberty Contrs. Co., 18 Mass. App. Ct. 971, 972 (1984).