Brant, J.
As noted by the Supreme Judicial Court in Henderson & Beal, Inc. v. Glen, 329 Mass. 748 (1953), disputes between real estate brokers and real estate sellers over eligibility for real estate brokers’ commissions are a frequent subject of litigation. Id. at 751. This case arises from such a dispute.
Maureen Fucillo (“Fucillo”), a real estate broker with Century 21 GR Associates (“Century 21”), told Steven L. Cicatelli (“Cicatelli”), an attorney and real estate developer, about a property in Winchester that was for sale. Cicatelli and Benjamin Caggiano (“Caggiano”), a builder, formed a partnership called C & C Realty Development, LLC (“C & C”) for the purpose of buying the Winchester property and constructing five townhouses on it.
As the townhouses were being built, C & C signed an exclusive listing agreement (“first agreement”) with Century 21 that covered the period from March 3, 2006 through September 3, 2006. Among other provisions, the first agreement provided for a four (4%) percent commission for any broker who produced a ready, willing, and able buyer who actually purchased the property. The agreement also contained language that no commission was due if C & C signed a valid brokerage agreement with another broker after the expiration of its agreement with Century 21. During the period of the initial agreement, Fucillo did produce one buyer who completed his purchase of one of the townhouses. Century 21 received a broker’s commission for the sale as provided in the agreement.
When the first listing agreement expired, the parties executed another agreement (“second agreement”) giving Century 21 exclusive brokerage rights from October 20, 2006 to December 29, 2006. This second agreement contained the following language that was not included in the first agreement:
In the event that a Buyer is procured by the Realtor, or Seller, or anyone else in accordance with the terns of this Agreement, ready, willing, and able to purchase the property, or if the property is sold or exchanged during the term of this Agreement, or any extension thereof, or after this *232 Agreement or any extension thereof has terminated, the property is sold or exchanged to a Buyer who has been shown through the property or has had negotiations with the Seller as a result of the efforts of the Realtor or his Agents, prior to the final termination of this Agreement or any extension thereof, in accordance with the terms of this Agreement, the Seller agrees to pay the Realtor a commission in the amount of four (4%) of the selling price or the price or value at which the real estate has been sold or exchanged.
In addition, the language in the first agreement providing for termination of the agreement if C & C signed a broker’s agreement with another broker subsequent to the expiration of the first agreement with Century 21 was not included in the parties’ second listing agreement. Not surprisingly, the new language and the omitted language were the causes of the legal dispute in this case.
On January 8, 2007, the parties executed a written extension of their second agreement to January 31,2007. Soon thereafter, Steven McFarlane (“McFarlane”), a potential buyer, looked at one of the condominium units that was still under construction. On January 27, 2007, McFarlane and his wife, Karen, (“the McFarlanes”) attended an open house for the townhouses that was conducted by Fucillo. The McFarlanes did not make an offer on any property at that time.
Upon the expiration of the second Century 21 agreement on January 31, 2007, C & C signed a new listing agreement with Coldwell Banker. After the execution of the new agreement, agents of Coldwell Banker contacted the McFarlanes. On February 21, 2007, the McFarlanes made a purchase offer that was rejected. However, on March 3,2007, they submitted a revised offer of $703,000.00 that was accepted. The sale closed on April 13, 2007.
Before the McFarlanes’ purchase, Fucillo had asked C & C to exempt from the listing agreement with Coldwell Banker any person who had attended the January 27,2007 open house. C & C declined. When C & C also refused to pay Century 21 a broker’s commission after the sale to the McFarlanes had been completed, Century 21 brought this action seeking a four (4%) percent commission under its second agreement with C & C. After a lengthy jury-waived trial, the judge found that Century 21 was entitled to the commission. C & C filed this appeal.
The general rule in Massachusetts is that a broker’s commission is due when a broker produces a buyer ready, willing, and able to purchase a listed property, the buyer signs a purchase and sale agreement for the property, and the buyer completes the transaction by actually purchasing the property. Oxford Business Brokers, Inc. v. Moriarty, 2008 Mass. App. Div. 224, 227, citing Tristram’s Landing, Inc. v. Wait, 367 Mass. 622, 629 (1975). However, the parties may, by contract, vary the prerequisite of an actual closing by including in the purchase and sale agreement a provision that is “sufficiently clear and specific as to the seller’s potential liability for a commission” if the buyer does not ultimately purchase the realty. Id., citing Plymouth Port, Inc. v. Smith, 26 Mass. App. Ct. 572, 575 (1988). The burden is on the broker to ensure that the provision is clear enough to alert the seller that the listing agreement varies from the Tristram’s Landing rule. Provisions that are not sufficiently clear are against public policy. Id. at 228 citing, Coldwell Banker/Hunneman v. Shostack, 62 Mass. App. Ct. 635, 638 (2004).
*233 In this case, the parties signed two listing agreements. The first agreement provided that the obligation to pay a broker’s commission would cease upon the expiration of the agreement and upon C & C’s signing of a new listing agreement with a different broker. But the second agreement did not contain this termination language, and instead provided that a broker’s commission would be due if Century 21 showed one of the townhouses to a potential buyer who later purchased the property after the expiration of the listing agreement. That was exactly the situation here. The McFarlanes looked at a property during the time when Century 21 had a listing agreement with C & C, but submitted an offer and ultimately purchased the property after that listing agreement had terminated. Under the terms of the second agreement, if enforceable, Century 21 was entitled to a broker’s commission when the McFarlanes purchased their property from C & C.
The judge in her decision enforced the language of the second agreement and found that a broker’s commission of four (4%) percent, equal to $29,200.00, was due to Century 21. We conclude that the judge’s decision is consistent with applicable law. See Oxford Business Brokers, Inc., supra at 227-228. First, the parties were free to negotiate different language in the second agreement than they had used in the first agreement. Second, the language in the second agreement, under the logic of Tristram’s Landing, permissibly provided for a broker’s commission for Century 21 in a situation in which a potential buyer it had introduced to a property ultimately purchased that property after the expiration of Century 21’s second listing agreement. The language in the second agreement was clear as to the rights of each party. As noted, “[t]he benefits to the seller of the protections of Tristram’s Landing can be waived by agreement between the broker and seller.” Coldwell Banker/Hunneman, supra at 638. The two principals of C & C, an experienced real estate developer and an experienced real estate attorney, should have been aware of the provision in the second agreement making Century 21 eligible for a broker’s commission even after the agreement had expired.
The facts in this case are the exact opposite of the situation at issue in Plymouth Port and similar cases in which a broker sought to enforce a contractual provision for a commission in the absence of a closing. Here, the McFarlanes did close on property that Century 21 had first shown them. There was nothing contrary to public policy in the provision in the second listing agreement that protected Century 21’s commission in the circumstances of this case and that permitted the judgment entered by the trial court in favor of Century 21.
Judgment affirmed.
So ordered.