JOSEPH F. PERRONCELLO *vs.* PAUL J. DONAHUE, SR., trustee.[1]

No. 03-P-1614.

Suffolk. February 16, 2005. - September 16, 2005.

Present: GELINAS, DOERFER, & MILLS, JJ.

Further appellate review granted, 445 Mass. 1108 (2005).

*Real Property,* Sale, Purchase and sale agreement. *Contract,* Sale of real estate, Performance and breach, Damages, Provision for liquidated damages. *Damages,* Breach of contract, Liquidated damages. *Estoppel. Consumer Protection Act,* Unfair or deceptive act, Unfair act or practice.

In a civil action seeking specific performance of a purchase and sale agreement regarding a piece of real property, the judge erred in granting summary judgment in favor of the plaintiff buyer on the defendant seller's counterclaim for liquidated damages as a result of the buyer's breach of the agreement, where, despite the fact that the buyer eventually substantially performed, he breached the contract as a matter of law when he failed to close on the date specified in the agreement, and there was insufficient evidence to support the inference that the seller waived the "time is of the essence" provision of the agreement [567-569]; furthermore, the liquidated damages clause was enforceable, where the parties had negotiated an amount that was fair to each side, and where the particular aftermath of this breach, while unusual, was irrelevant to an assessment of the clause's conscionability [569-570]; finally, no doctrine of res judicata, merger, or bar precluded the seller from seeking damages for the breach of the agreement [570].

In a civil action seeking specific performance of a purchase and sale agreement regarding a piece of real property, the judge properly granted summary judgment in favor of the plaintiff buyer on the defendant seller's counterclaim for violation of G. L. c. 93A, § 11, where the buyer was not engaged in trade or commerce with regard to the transaction. [570-571]

CIVIL ACTION commenced in the Superior Court Department on June 30, 1998.

A motion for partial summary judgment was heard by *Linda E. Giles,* J., and the remainder of the case was heard by *Maria I. Lopez,* J., on a motion for summary judgment.

*Albert L. Farrah, Jr.,* for the defendant.

---

[1] Of the 198 Beacon Street Realty Trust.

*Mitchel S. Ross* for the plaintiff.

DOERFER, J. The plaintiff, Joseph F. Perroncello, the buyer, and the defendant, Paul J. Donahue, Sr., as trustee of the 198 Beacon Street Realty Trust (Donahue), the seller, entered into a purchase and sale agreement (agreement) for property at 198 Beacon Street, Boston (property). The sale did not close, and Perroncello commenced an action in the Superior Court for specific performance (among other claims), while Donahue counterclaimed, asserting that Perroncello had breached the contract and was liable for liquidated damages. Donahue also claimed that Perroncello's conduct was a violation of G. L. c. 93A, § 11.[2] Donahue appeals the grant of summary judgment in Perroncello's favor on Donahue's liquidated damages and c. 93A claims. We reverse with regard to the liquidated damages claim and direct the entry of judgment in Donahue's favor on that claim, but we affirm with regard to the c. 93A claim.

1. *Background.* The material facts are undisputed. On April 3, 1998, Donahue and Perroncello signed an agreement, in which Donahue agreed to sell the property for $2,250,000 (Donahue's son, Mark, was responsible for most of the interactions with Perroncello). Perroncello paid a deposit of $150,000, with the remainder due at closing. According to the agreement, the deposit was nonrefundable and would serve as liquidated damages in the event Perroncello breached the contract. The contract contained a "time is of the essence" clause and had a deadline for closing on May 6, 1998. The agreement did not provide for an extension of the closing date if there was a delay in obtaining a mortgage. The agreement did provide Perroncello with an option for a thirty-day extension, to June 5, 1998, which he exercised.[3]

As the May 6 deadline approached, the conflict in this case arose. On June 4, Perroncello was still awaiting an official notification that his mortgage application had been approved. His attorney sent a written request to Donahue's attorney, seeking an extension of the closing date to June 16 for that reason.

---

[2]Donahue's counterclaim claim for abuse of process was not pursued.

[3]That option provided for "carrying costs" for the thirty day period, not to exceed $500 a day, and was not affected by the breach of contract clause.

Perroncello's attorney also requested that Donahue's attorney sign the request for the extension and return it to confirm acceptance. Donahue's attorney did not sign or return the request.

From this point forward, the parties offer conflicting accounts of what occurred, although the conflicting versions turn out to be immaterial to a resolution of the legal issues involved. Mark Donahue, in his affidavit, states that Perroncello did not contact him, other than by the June 4 request, concerning a possible extension before June 5. Perroncello alleges that, in a telephone call on June 4, Mark Donahue "indicated to [him] that [he] should continue to work with [his bank] to fix a closing date." On June 5, Donahue's attorney sent a "formal notice" to Perroncello's attorney, restating that June 5 was the deadline for performance of the contract. Perroncello, in his affidavit, described his reaction:

> "The letter, in my view, was disingenouous [sic]. The letter, in my view, made no sense given my oral and written communications to Donahue the day before. It was as if Donahue had not communicated our conversation to his counsel. It just seemed like a non-sequiter [sic] that conflicted with my earlier conversation with Donahue that I should set a closing date. Donahue's counsel informed us his letter was just a formality and he made light of it."

> "As a result of the conflict, I again contacted Donahue who led me to believe that I should ignore his counsel's letter and just proceed with the closing. He said the letter was 'no big deal' and made light of it."

June 5 passed with no closing. On June 12, Donahue's attorney sent an explicit notification that he considered the contract to be breached and the deposit forfeited. During the month of June, the parties met to discuss the matter, but failed to reach a resolution. On June 30 Perroncello filed a complaint and a motion for endorsement of a lis pendens, which was allowed.

After several months of negotiation, Donahue offered what his attorney titled "Defendant's Motion to Dismiss and Offer of

Judgment of Specific Performance."[4] A judge subsequently ordered conveyance of the property in accordance with the offer and also stated the following: "Meanwhile, the remaining counts and counterclaims here shall survive, specifically allowing the parties to pursue money damages against each other." The closing took place on September 23, 1998.

Donahue filed a motion dated December 31, 1998, for summary judgment, which was denied as to the $150,000 claim for liquidated damages.[5] On August 4, 1999, Donahue filed a motion for clarification of the order on the "Defendant's Motion to Dismiss and Offer of Specific Performance." That motion was granted on August 19, 1999, and an amended order dated that same day read as follows: "Meanwhile, all remaining counts and counterclaims here shall survive. It is my specific intention that this order will not prohibit the parties from pursuing money damages, by way of any of their currently pleaded claims or counterclaims against each other."

Perroncello, having already dropped his other claims after the court-ordered conveyance, successfully moved for summary judgment, first on Donahue's counterclaims for liquidated damages and then on damages under G. L. c. 93A. Donahue is appealing both of those determinations.

2. *Breach of contract.* The judge's decision on Donahue's breach of contract claim is based on the premise that the contract between Donahue and Perroncello was, in fact, substantially performed. Perroncello further argues that Donahue received his "expectation interest" from the contract in receiving the full original contract price, even if it was delayed. See, e.g., *Doering Equip. Co.* v. *John Deere Co.*, 61 Mass. App. Ct. 850, 856 (2004).

Both arguments fail to address the evidence that Perroncello did, in fact, breach the original agreement by failing to close on

---

[4]The mechanism of an offer of judgment was suggested by a judge who hinted that she was growing skeptical of Perroncello's claim that he was prepared to buy the property and suggested that the memorandum of lis pendens might be dissolved if Perroncello did not pay the purchase price and take a deed.

[5]Donahue prevailed on a summary judgment motion granting him his "carrying costs" from May 6 to June 5, as provided for in the contract. Perroncello is not appealing that part of the judgment.

the date specified. "When parties agree in writing that time is to be of the essence, courts will hold parties to the deadlines they have imposed upon themselves." *Vickery* v. *Walton*, 26 Mass. App. Ct. 1030, 1031 (1989). It is uncontested that not only did Perroncello not complete performance by the deadline, but that he was neither ready nor able to do so. Perroncello offers no evidence of a written agreement to extend the deadline beyond June 5.[6]

It is possible to waive a "time is of the essence" clause orally or implicitly, but doing so requires unequivocal actions on the part of the waiving party. See *McCarthy* v. *Tobin*, 429 Mass. 84, 89 (1999) ("continu[ing] to deal with [the other party's] lawyer in an effort to craft a mutually satisfactory agreement" is a sign of implied waiver). "A seller's indication that he is willing to grant an extension if one is needed is different from actually granting one . . . . [A party's] subjective belief does not alter the parties' written agreement." *Owen* v. *Kessler*, 56 Mass. App. Ct. 466, 470-471 (2002). Based on these standards, there is insufficient evidence in the record to support the inference that Donahue waived the "time is of the essence" provision. Perroncello's affidavit in opposition to Donahue's motion for summary judgment is vague and subjective. Perroncello provides no further description of his conversation with Donahue beyond saying "he indicated to me" and "he led me to believe" that he should continue to work on a closing date.

Perroncello's description of his response to receiving Donahue's letter is a perfect example of the situation contemplated by *Owen*. There a buyer's "subjective belief" that he had received an extension was not sufficient to establish that an extension had in fact been granted. *Id.* at 470-471. Even if Donahue's lawyer told Perroncello that the June 5 notice was a "formality," this is not the kind of unequivocal action that allows the inference of a waiver of the "time is of the essence"

---

[6] The general proposition that damages may spring from delay can be simply stated: "In the absence of a specific contract provision to the contrary, a party to a contract may recover damages caused by delay in the commencement or completion of performance if it can be shown that the delay was a breach of that contract." *St. Germain & Son* v. *Taunton Redev. Authy.*, 4 Mass. App. Ct. 46, 48 (1976).

clause. Viewing the evidence in Perroncello's response to Donahue's summary judgment motion in the light most favorable to Perroncello, there is not sufficient evidence to create an issue of material fact whether Perroncello breached the agreement. As matter of law, Perroncello breached the contract.

After Perroncello's breach on June 5, his further interactions with Donahue are viewed through a different lens than they would be if the breach had not occurred. Perroncello offers no evidence that Donahue or his attorney admitted that negotiations were still ongoing in any of their interactions after June 5. See *Coldwell Banker/Hunneman* v. *Shostack*, 62 Mass. App. Ct. 635, 641 (2004) (mere evidence of post-breach discussion does not amount to proof of waiver where there is no admission that negotiations were continuing). Any further discussions between Perroncello and Donahue, even as Perroncello describes them, never brought up the specific original issues: Perroncello merely assumed that an extension had been granted. Finally, on June 12, Donahue's attorney unequivocally stated that Donahue considered the agreement terminated. After this point, there could be no mistaking that further discussions were intended to salvage the deal only by creating a new agreement rather than resurrecting the old one.

3. *Liquidated damages.* "Liquidated damages clauses which provide for the seller of real estate to retain the buyer's deposit are recognized in Massachusetts . . . [and] are a common real estate practice." *Kelly* v. *Marx*, 428 Mass. 877, 879 (1999). The judge ruled that Donahue could not recover the liquidated damages established in the contract even if there were a breach, since that would exceed his expectation interest from the contract. This was error. In *Kelly*, a seller was allowed to recover a deposit as liquidated damages even when the seller eventually sold the property for *more* than the original contract price. *Id.* at 878. Where liquidated damages clauses are concerned, we explicitly reject a so-called "second-look" approach to liquidated damages clauses (where a clause is re-evaluated in light of later circumstances) in favor of enforcing them "where, at the time the agreement was made, potential damages were difficult to determine and the clause was a reasonable forecast of damages expected to occur in the event of a breach." *Ibid.*

Perroncello argues that this case can be distinguished from *Kelly* because here the *original* buyer eventually purchased the property at the original contract price. This, however, is a distinction not supported by the text of *Kelly*. The parties here "negotiated a liquidated damage amount that was fair to each side based on their unique concerns and circumstances surrounding the agreement, and their individual estimate of damages in event of a breach." *Id.* at 880. While the particular aftermath of this breach was an unusual one, that aftermath is irrelevant to an assessment of the clause's conscionability.[7] The fact that a turbulent legal proceeding followed is an example of both the benefits and pitfalls of such clauses to negotiating parties: they allow both parties to minimize risk and calculation of losses from a breach, although at the expense of a completely accurate accounting of those losses.

4. *Issue preclusion.* Below and on appeal, Perroncello argues that Donahue's "Offer of Judgment of Specific Performance" precluded Donahue from seeking any damages arising from the breach of contract claim. While this argument might have traction in the abstract, it does not apply to the particular facts of this case. "Under a generally accepted exception to the res judicata doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action." *Apparel Art Intl., Inc.* v. *Amertex Enterprises Ltd.,* 48 F.3d 576, 586 (1st Cir. 1995). See Restatement (Second) of Judgments § 26(1)(b) (1982).

Here, the judge who issued the order on that "Offer of Judgment of Specific Performance" could not have been clearer that she intended to preserve all the other claims. No doctrine of res judicata, merger, or bar should preclude the breach of contract claim based on the lower court's order.

5. *Donahue's c. 93A claim.* Donahue's other counterclaim is based upon G. L. c. 93A, § 11. He claims that in filing a lawsuit and a memorandum of lis pendens when Perroncello had already breached the contract, Perroncello engaged in an "unfair or deceptive act or practice." The dispositive issue in this claim, however, revolves around whether Perroncello was engaged in

---

[7]On appeal, Perroncello does not claim that the amount of liquidated damages is unconscionable per se, so that question need not be addressed here.

"trade or commerce." As the trial judge noted, *Begelfer* v. *Narajan*, 381 Mass. 177 (1980), instructs whether a given transaction falls under the authority of the statute:

> "The question whether a private individual's participation in an isolated transaction takes place in a 'business context' must be determined from the circumstances of each case. To establish a private person's liability under § 11 we assess the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties. . . . Other relevant factors are whether similar transactions have been undertaken in the past, whether the transaction is motivated by business or personal reasons (*as in the sale of a home*), and whether the participant played an active part in the transaction."

*Id.* at 190-191 (emphasis added). It is undisputed that Perroncello works as a real estate developer and that early in the process he considered using the property for commercial purposes. However, the only act that Donahue alleges to form the basis of his claim under G. L. c. 93A is Perroncello's filing of his suit against Donahue. The suit was filed on June 30, 1998, and Donahue provides no evidence that Perroncello was acting in a "business context" at that time. On the contrary, Perroncello filed a universal residential loan application on May 5, 1998, on which he indicated that the property was to be his primary residence. Donahue has also submitted no evidence regarding the subsequent use of the property, aside from an affidavit by Mark Donahue in which he merely states that the property appears to be under construction. This does not provide any evidence at all that the building is being used or will be used commercially. Donahue has provided no evidence that Perroncello was engaged in trade or commerce with regard to this transaction at the time he filed the lawsuit. Thus, contrary to Donahue's claim, there was no material dispute of fact as to whether G. L. c. 93A applied in this case.

6. *Conclusion.* Perroncello breached his contract with Donahue, and because of that, Donahue is entitled to the liquidated damages as stipulated in the contract. However, when Perroncello filed suit against Donahue, he was not engaged in

trade or commerce, and thus G. L. c. 93A does not apply. Accordingly, that portion of the judgment dismissing Donahue's claim for breach of contract is vacated, and a new judgment for Donahue on that claim, including an award of liquidated damages, shall enter. The portion of the judgment dismissing the G. L. c. 93A claim is affirmed.

*So ordered.*