JOSEPH F. PERRONCELLO vs. PAUL J. DONAHUE, SR., trustee.[1]

Suffolk. November 6, 2006. - January 12, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Real Property,* Sale, Specific performance, Purchase and sale agreement. *Contract,* Sale of real estate, Performance and breach, Specific performance, Damages, Provision for liquidated damages. *Damages,* Breach of contract, Liquidated damages.

A seller of real estate was not entitled to enforcement of the liquidated damages clause contained in the contract of sale for the buyer's alleged breach of the contract, where the seller obtained court-ordered specific performance from the buyer subsequent to the alleged breach. [203-206]

CIVIL ACTION commenced in the Superior Court Department on June 30, 1998.

A motion for partial summary judgment was heard by *Linda E. Giles,* J., and the remainder of the case was heard by *Maria I. Lopez,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Mitchel S. Ross (Francis X. Hubbard* with him) for the plaintiff.

*Albert L. Farrah, Jr.,* for the defendant.

*William V. Hovey,* pro se, amicus curiae, submitted a brief.

CORDY, J. In this case, we must decide whether the seller of real estate is entitled to liquidated damages for the buyer's breach of the contract of sale where, subsequent to the breach, the seller obtained court-ordered specific performance from the buyer. The question is one of first impression in the Commonwealth.

---

[1] Of 198 Beacon Street Realty Trust. Paul J. Donahue, Sr. (seller), signed the contract in his capacity as trustee of 198 Beacon Street Realty Trust. He then authorized his son, Mark, to act on behalf of the trust in selling the property, and in all matters relating to this lawsuit. We refer to them interchangeably as the "seller."

A judge in the Superior Court granted summary judgment against the seller, concluding that he "got all he bargained for in accepting [the agreed sales price]; and, as such, [was] not entitled to any additional windfall." On appeal, the Appeals Court reversed, and entered summary judgment for the seller, holding that the buyer breached the "time is of the essence" provision in the contract by failing to close on the date specified; the liquidated damage clause was reasonable when negotiated; and the buyer's specific performance did not preclude the additional remedy. *Perroncello* v. *Donahue*, 64 Mass. App. Ct. 564, 568-570 (2005).

We granted the buyer's application for further appellate review, limited to whether the seller was entitled to liquidated damages and whether the seller had breached the contract. Because we conclude that, in the circumstances of this case, the seller was not entitled to liquidated damages after obtaining specific performance, we need not resolve whether the contract had been breached.

1. *Background.* The material facts are undisputed. On April 3, 1998, the plaintiff buyer, Joseph F. Perroncello (buyer), and the defendant seller, Paul J. Donahue, Sr. (as trustee) (seller), signed a purchase and sale contract (contract) for property at 198 Beacon Street in Boston. The agreed-on price was $2,250,000. The contract contained an acceptance of deed clause that provided that "acceptance of deed by the BUYER, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed." It also contained a liquidated damages clause providing that, if "the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER and this shall be SELLER's sole remedy at law or in equity." The buyer paid a deposit of $150,000. The sale was to close by May 6, 1998, but the agreement provided that the buyer could seek one thirty-day extension (until June 5), which he did, during which time he would be obligated to pay the seller's carrying costs of up to $500 per day.[2] The contract did

---

[2]The agreement recited that carrying costs included "seller's financing costs, taxes, insurance and the like."

not include a mortgage contingency clause, and recited that time was of the essence.

As of June 4, 1998, the buyer had not finalized the mortgage financing he needed to purchase the property. His attorney sent a request to the seller's attorney seeking an extension of the closing to June 16. The seller's attorney responded on June 5 with a letter stating that the seller was ready to deliver the deed on June 5. The parties recount differing versions of the events that followed. The buyer asserts that the seller told him to continue working with his bank to secure the mortgage and that any correspondence sent by the seller's attorney stating that June 5 was the deadline should be disregarded. On June 12, the seller's attorney sent written notice to the buyer's attorney that, no closing having occurred, the contract was breached and the deposit forfeited. The seller and the buyer had further discussions and meetings about the real estate through the month of June. On June 23, 1998, the bank approved the buyer's mortgage, and he so notified the seller.[3] Thereafter, the seller did not return the buyer's telephone calls, and put a "For Sale" sign on the property.

On June 30, 1998, the buyer filed a complaint in the Superior Court for breach of contract, specific performance, deceit, and conversion.[4] The buyer also sought both a restraining order preventing the seller from marketing the property, and the indorsement of a lis pendens. The lis pendens was allowed, thus burdening the prospect of a sale of the property to anyone else. The seller counterclaimed for abuse of process, breach of contract, and unfair and deceptive trade practice under G. L. c. 93A.

There were a series of hearings in July and August, principally on the subject whether the lis pendens should be lifted. It was not. On August 4, 1998, the seller offered to settle the litigation by selling the property to the buyer for the agreed-on price, plus

[3] The bank approved a mortgage in the amount of $1,687,500. There is a dispute whether a mortgage in this amount actually put the buyer in a position to purchase the property, insofar as additional funding at least would be necessary to meet the agreed-on price. Resolution of this issue is not necessary to our decision.

[4] The buyer also sought an accounting of his $150,000 deposit.

thirty days' carrying costs, and additional carrying costs incurred from June 5 through August 14. This offer was not accepted for reasons that are disputed by the parties.[5]

Subsequently, on September 4, 1998, the seller filed what he captioned as a motion to dismiss and offer of judgment of specific performance. In the motion, the seller requested that the judge "enter Judgment on the Specific Performance Count of Plaintiff's complaint in favor of Plaintiff [buyer], pursuant to the April 3, 1998 [contract]." He also requested that the lis pendens be dissolved and the count for specific performance be dismissed if the closing did not occur before a date certain to be set by the judge,[6] and that "[a]ll other counts and counterclaims shall survive the dismissal of the specific performance [claim]." The judge treated the motion as a motion for and assent to entry of judgment for the buyer on his claim for specific performance, and allowed it. In her order allowing the motion, the judge instructed the parties to convey the property in accordance with the terms of the original agreement by September 15, 1998; lifted the lis pendens; and directed that "the remaining counts and counterclaims here shall survive, specifically allowing the parties to pursue money damages against each other." The closing took place on September 23, 1998. The seller applied the $150,000 deposit toward the purchase price of $2,250,000.

The litigation continued, and on May 21, 1999, another judge denied the seller's motion for partial summary judgment on his counterclaim for breach of contract, ruling that whether the seller waived the "time is of the essence" provision in the contract was a disputed issue of material fact. In her ruling, the judge also commented that, even if the buyer were found to have breached the contract, the seller "may nonetheless be foreclosed" from seeking liquidated damages because he had

---

[5]The buyer's attorney was apparently undergoing surgery on August 4 or 5, 1998, and could not respond to the seller's offer within the time limit set forth in the settlement offer. The seller asserted that the buyer was not in a position to purchase the property on August 4 because he lacked financing and that the buyer's failure to accept or reject the offer was a dilatory tactic.

[6]This was apparently an effort by the seller to force the buyer's hand by requiring him to put up the money and close the deal or risk his suit being dismissed.

sought (albeit by filing a motion for entry of judgment against himself) and received specific performance from the buyer. The judge did, however, award the seller his carrying costs for the period from May 6 to June 5, 1998, as separately provided in the contract.[7] In view of the judge's comment whether the seller might be foreclosed from seeking liquidated damages on his breach of contract claim, the seller sought a clarification from the judge who had allowed his motion on the specific performance claim. In response, that judge issued an amended order stating it was her "specific intention that this order will not prohibit the parties from pursuing money damages, by way of any of their currently pleaded claims or counterclaims against each other." The buyer then filed a motion for summary judgment on the seller's counterclaim for liquidated damages under the contract. That motion was granted and this appeal followed.[8]

2. *Discussion.* It is a settled principle that when the purchaser of real property breaches a contract for sale, the seller may retain the property and bring an action for damages or may request specific performance of the contract by offering to perform, and bringing an action for the purchase price. 25 S. Williston, Contracts § 66:79 (4th ed. 2002). H.J. Alperin & R.F. Chase, Consumer Law § 28:36 (2d ed. 2001). See, e.g., *Greenfield Country Estates Tenants Ass'n* v. *Deep*, 423 Mass. 81, 87-88 (1996); *Richman* v. *Seaberg*, 353 Mass. 757 (1967); *Noyes* v. *Bragg*, 220 Mass. 106, 109 (1915).[9] If the purchase and sale contract contains a provision awarding liquidated damages to the seller in the event of the purchaser's breach, that clause will be enforced so long as "at the time the agreement was made, potential damages were difficult to determine and the clause was a reasonable forecast of damages expected to oc-

---

[7]The seller had not amended his counterclaim, nor apparently did he then seek additional carrying costs for the period between June 5 and the date of the closing.

[8]The buyer's motion for summary judgment on the seller's G. L. c. 93A counterclaim was subsequently granted by a different judge. The Appeals Court affirmed summary judgment. *Perroncello* v. *Donahue*, 64 Mass. App. Ct. 564, 570-571 (2005). Our review does not extend to this claim.

[9]In this case, the contract provided that the seller's sole remedy at law or in equity was the retention of the deposit as liquidated damages. The contract did not provide for specific performance. It was the buyer who initially sought specific performance.

cur in the event of a breach." *Kelly* v. *Marx*, 428 Mass. 877, 878 (1999). Liquidated damages clauses providing that a real estate seller may retain the buyer's deposit on breach are a common real estate practice recognized in Massachusetts. *Id.* at 879, citing *Lynch* v. *Andrew*, 20 Mass. App. Ct. 623, 627 (1985).

When seeking specific performance of a contract, the seller offers to surrender title to the property and collect the purchase price. In bringing an action for damages on the breach of the contract, the seller proposes to retain the property and have his compensation in damages. While these remedies may not be inconsistent in the sense that they are both premised on the validity of the contract, ordinarily a seller is not entitled to seek both remedies; the retention of a deposit as liquidated damages is an alternative to specific performance, not an additional remedy. See *Connihan* v. *Thompson*, 111 Mass. 270, 271-272 (1873) (remedies of specific performance and damages for breach are "alternative remedies, but not inconsistent" in sense that they both affirm validity of contract; plaintiff may, however, be required to elect which he will further prosecute); *Slaughter* v. *La Compagnie Francaise des Cables Telegraphiques*, 119 F. 588, 588-589 (2d Cir. 1902), cert. denied, 191 U.S. 574 (1903), citing *Connihan* v. *Thompson, supra* ("One cannot have damages for the breach of a contract, and a decree also for its specific performance. Not because the remedies are inconsistent. On the contrary, they are alternative"); *Lynch* v. *Andrew, supra* (liquidated damages are an "alternative to specific performance"). See also *McMahan* v. *McMahon*, 122 S.C. 336, 342 (1922) ("when either party to the sale of land has failed in his obligation the other is entitled to the alternative remedy of specific performance in equity or damages at law"; "these remedies are not considered inconsistent remedies, though they may not be able to 'stand together' the enforcement of the one remedy being a satisfaction of the party's claim"); H.J. Alperin & R.F. Chase, Consumer Law § 28:36, at 70 (2d ed. 2001) ("in lieu of seeking specific performance or bringing suit for damages, the seller can retain the purchaser's deposits as liquidated damages"). Cf. Restatement (Second) of Contracts § 378 comment d, at 230 (1981) ("the remedy of specific performance . . . and that of damages for total breach of contract are inconsistent").

The seller directs our attention to, and the Appeals Court largely relied on, our decision in *Kelly* v. *Marx, supra. Perroncello* v. *Donahue*, 64 Mass. App. Ct. 564, 569-570 (2005). Such reliance is unwarranted. The *Kelly* case is inapposite. There, the judge permitted the seller to keep the buyer's deposit as liquidated damages following the buyer's failure to tender payment for the real estate. Specific performance was sought by neither party. Rather, after the buyer's breach, the seller found another buyer who purchased the property for $5,000 more than the original contract price. *Kelly* v. *Marx, supra* at 878. The question presented was whether it was appropriate to enforce the liquidated damages clause of the contract, where the seller ultimately sold the property at a higher price to another party, thereby suffering no loss. We held that the liquidated damages clause was enforceable because potential damages were difficult to determine at the time of the contract formation, and the amount agreed to was a reasonable forecast of damages in the event of a future breach, at that time. *Id.* at 878-882. In so holding, we rejected the "second look" approach to liquidated damages. We did not imply that liquidated damages could be obtained, in addition to specific performance from the buyer.

Here, the seller sought an order from the judge directing the buyer to purchase the property by September 15, 1998, at the agreed on purchase price, and the buyer complied.[10] The only additional damages the seller was entitled to seek under the contract were for the carrying costs he incurred as a result of the delay between the expected date of performance and the time of actual conveyance. These carrying costs were separately provided for in the contract and ancillary to its performance. The obligation to pay the costs was triggered by the buyer's election to delay the closing for thirty days.[11] This award is not inconsistent with specific performance. Restatement (Second)

[10]Although the parties did not close until September 23, the seller does not dispute that the property was conveyed pursuant to the judge's order.

[11]Judgment in the amount of $13,859.41 plus interest was entered for the seller on May 22, 2003. The seller did not appeal from this judgment and only sought additional damages for the delay between June 5 and the closing of September 23 in his appeal of the denial of liquidated damages. Because these damages were not sought below, we do not consider them here. *Penney* v. *First Nat'l Bank*, 385 Mass. 715, 718 n.2 (1982), citing *Paro* v. *Longwood*

of Contracts, *supra* at § 378 comment d ("A party who seeks specific performance or an injunction may . . . be entitled to damages to compensate him for delay in performance").

The law of contracts is intended to give an injured party the benefit of the bargain, not the benefit of the bargain and a windfall. *Situation Mgt. Sys., Inc.* v. *Malouf, Inc.*, 430 Mass. 875, 880 (2000), and cases cited. The judge who initially granted the seller's motion for the entry of judgment on the specific performance claim in September of 1998 did not rule to the contrary. She merely confirmed that the parties could continue to pursue their other claims for money damages against each other: claims for G. L. c. 93A violations, for abuse of process, for deceit, and for breach of contract were still pending. The judge's ruling did not imply a ruling on the merits of any such claims. Other judges ruled that some had merit (carrying costs under the contract) and others, such as the claims for liquidated damages and damages under G. L. c. 93A, did not. To award liquidated damages against the buyer for his failure to close and also specific performance to the seller requiring the buyer to acquire the property by a date certain at the contracted price, would violate the fundamental principles of contract law.

3. *Conclusion.* The order granting summary judgment to the buyer on the issue of liquidated damages is affirmed.

*So ordered.*

*Hosp.*, 373 Mass. 645, 652 n.9 (1977).