# United States Court of Appeals
## For the First Circuit

No. 12-1920

THOMAS A. ATWATER,

Plaintiff, Appellant,

v.

MITCHELL D. CHESTER, as he is the Commissioner of
Elementary and Secondary Education of the Commonwealth of
Massachusetts; MANCHESTER-ESSEX REGIONAL SCHOOL DISTRICT,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

H. Reed Witherby, with whom Garrick F. Cole and Smith Duggan
Buell & Rufo LLP were on brief, for appellant.
Amy Spector, Assistant Attorney General, with whom Martha
Coakley, Attorney General, was on brief, for appellee Mitchell D.
Chester.
Geoffrey R. Bok, with whom Stoneman, Chandler & Miller LLP was
on brief, for appellee Manchester-Essex Regional School District.

September 20, 2013

**THOMPSON, <u>Circuit Judge</u>.** Appellant Thomas Atwater sought review of his dismissal from his teaching position in the Manchester-Essex Regional School District ("School District"), first in Massachusetts state court and then in Massachusetts federal district court. Concluding that Atwater's claims were barred by res judicata, the district court granted summary judgment in favor of Appellees, the School District and the Massachusetts Commissioner of Elementary and Secondary Education ("Commissioner"). Atwater now appeals the grant of summary judgment, presenting a number of reasons why res judicata does not bar his federal claims from adjudication in federal court. Finding none persuasive, we affirm.

## BACKGROUND

### Conduct Unbecoming

Atwater was a teacher with "professional status" in the School District until March 2005, when he was informed by letter of the District Superintendent's intention to dismiss him from his employment for inappropriate sexual conduct toward a student.[1] The

---

[1] A quick word about professional status. Formerly referred to as "tenure," a teacher who has served in the public schools of a Massachusetts school district for three consecutive school years is entitled to professional-teacher status. Mass. Gen. Laws ch. 71, § 41; <u>see also</u> <u>Atwater</u> v. <u>Comm'r of Educ.</u>, 957 N.E.2d 1060, 1062 n.2 (Mass. 2011). Teachers with professional status "shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards . . . or other just cause." Mass. Gen. Laws ch. 71, § 42.

particular instances giving rise to Atwater's dismissal are not necessary for our determination, and so we do not review them in detail here. Atwater invoked his right under Mass. Gen. Laws ch. 71, § 42 to seek review of the Superintendent's action by filing a petition for arbitration with the Commissioner. Pursuant to the procedures required by section 42, the Commissioner coordinated the selection of a private arbitrator to resolve Atwater's challenge to his dismissal.[2] After a five-day arbitration, the arbitrator issued a ninety-nine page decision affirming Atwater's dismissal for conduct unbecoming of a teacher and finding that the Superintendent and the School District did not violate section 42 in dismissing him.

## A Multiplicity of Lawsuits

On August 4, 2006, Atwater filed suit in Massachusetts Superior Court challenging the discharge of his employment and seeking to vacate the arbitrator's decision. Over three weeks later, on August 30, Atwater filed this complaint in federal court. Three counts advanced supposed state-law violations: the arbitrator failed to employ the statutory standard in determining his petition (count 1), which meant she exceeded her statutory authority under section 42 (count 2), and, acting on behalf of the

---

[2] Mass. Gen. Laws ch. 71, § 42 provides that teachers with professional-teacher status "may seek review of a dismissal decision within thirty days after receiving notice of his dismissal by filing a petition for arbitration with the commissioner."

Commissioner, she exhibited bias and prejudice against him (count 3). Three counts advanced supposed federal-law violations: "ineffective administrative supervision," transgressing his right to "procedural due process" (count 4); improper "delegation of a governmental function" (count 5); and improper "insulation of determination by private individual from meaningful judicial review," transgressing some sort of generalized "due process" right (count 6). In footnotes to his federal-court complaint, Atwater, citing England v. Louisiana State Board of Medical Examiners, 375 U.S. 411 (1964), asserted that he included the state claims "for completeness" but did not submit them for the federal court's adjudication.

The very next day, August 31, Atwater amended his state-court complaint so that it contained exactly the same six claims as his federal-court complaint. And he noted that he had included the federal claims only "for completeness" and not for the state court's adjudication, again citing to England. Along with his amended complaint, Atwater submitted to the state court a "Notice of Reservation of Federal Claims," apprising that court that he had sued the same defendants in federal court on the same grounds. He again stated that he included the federal claims only "to inform" the state court and "for completeness," and he purported to reserve the claims for adjudication in federal court, once more referencing England. He also noted his intent to seek a stay of the action in

-4-

federal court pending the state court's determination on his state-law claims and after the conclusion of any additional proceedings.

In answering the amended state-court complaint, the Commissioner and the School District objected to Atwater's attempt to reserve his federal claims, stating that he had improperly sought an "England reservation" of the federal claims in counts four, five, and six. The Commissioner specifically noted that the federal court had not yet remitted Atwater to state court on abstention grounds, and the School District added that his claims should be dismissed for improper claim splitting. The Commissioner and the School District made the very same points in answering the federal-court complaint.

In a joint scheduling conference statement, the parties, citing Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), moved the federal court to stay further proceedings pending the outcome of the "related" state-court case. Resolving that case first "will affect substantially the constitutional issues" before the federal court, the parties wrote, so "a stay based on Pullman abstention principles is appropriate." But the parties stressed that, by joining this motion, neither the Commissioner nor the School District "waive[d] their objections to [Atwater's] contention that he has effectively reserved his federal constitutional claims for this [c]ourt's consideration." The district court responded by entering an "order of closure for

-5-

statistical purposes," dismissing the federal-court case without prejudice to the parties' "moving to restore [the case] to the docket if any further action is required upon completion and termination of any state court proceedings . . . ."

### A State-Court Adjudication

Atwater proceeded with his state-law claims in state court. On cross motions for summary judgment, the state-trial court rejected Atwater's state-law claims and affirmed the arbitrator's decision. In a footnote appearing on the opening page of its decision, the state-trial court wrote that Atwater had also alleged three federal-law claims in his state-court complaint but had "expressly reserved" them "for adjudication" in federal court. The Massachusetts Supreme Judicial Court ("SJC") upheld the entry of summary judgment for the Commissioner and the School District, with a footnote in the opinion's background section saying:

> Atwater also raised three Federal claims, including Federal due process claims, which he has reserved for adjudication by the United States District Court for the District of Massachusetts. Thus, these claims are not before us.

Atwater, 957 N.E.2d at 1067 n.7.

### Back to Federal Court

After the conclusion of his state-court case, Atwater filed a motion to reopen his federal-court case, seeking to adjudicate his federal claims. Neither the Commissioner nor the School District opposed the restoration of the case. But both took

-6-

pains to again emphasize their view that Atwater's purported England reservation was a nonstarter.

The Commissioner and the School District moved for summary judgment, arguing that the state court's judgment was res judicata in the federal proceeding and that his attempted England reservation failed. Atwater opposed the motions and cross-moved for summary judgment himself, asserting that res-judicata principles did not bar his federal claims and that his England reservation was effective. Rejecting Atwater's arguments, the district court held that his supposed "England reservation" was ineffective and that his federal claims could have been litigated in the previous state-court case and so were barred under res judicata. Consequently, the district court denied his motion and granted summary judgment to the Commissioner and the School District. This appeal followed, over which we have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

The parties — who agree on little else — correctly agree that res judicata bars Atwater's federal-law claims unless an exception applies.[3] Atwater insists that three exceptions are in

---

[3] "[F]ederal courts must give preclusive effect to a state-court judgment if the state court itself would." Newman v. Krintzman, No. 12-1995, 2013 WL 3814979, at *2 (1st Cir. July 24, 2013). So here that means that Massachusetts preclusion law controls. See id. And Massachusetts res-judicata law "makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have

-7-

play.  He first argues that his <u>England</u> reservation lets him escape the preclusive effect of the state-court judgment.  Alternatively, he argues that the state courts expressly reserved his right to pursue his federal-law claims in federal court and that we must respect what they did.  And finally, he argues that, regardless of ordinary res-judicata rules, the equities require that we let his federal case go forward.

We first set out the summary-judgment standard and then deal with each argument in turn.

### Summary-Judgment Standard

We review the district court's grant of summary judgment de novo, taking the facts in the light most favorable to Atwater. See <u>Alvarado</u> v. <u>Donahoe</u>, 687 F.3d 453, 458 (1st Cir. 2012). Summary judgment is called for when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  <u>Gerald</u> v. <u>Univ. of P.R.</u>, 707 F.3d 7, 16 (1st Cir. 2013) (quoting <u>Martínez-Burgos</u> v. <u>Guayama Corp.</u>, 656 F.3d 7, 11 (1st Cir. 2011)); see Fed. R. Civ. P. 56(a).  "The presence of cross-motions for summary judgment neither dilutes nor distorts

---

been adjudicated in the action."  <u>Kobrin</u> v. <u>Bd. of Registration in Med.</u>, 832 N.E.2d 628, 634 (Mass. 2005) (quoting <u>O'Neill</u> v. <u>City Manager of Cambridge</u>, 700 N.E.2d 530 (Mass. 1998)) (explaining that res judicata is an umbrella term that covers both claim preclusion and issue preclusion).  Again, no one really disputes that the basic requirements of res judicata are met in this case.  Rather, the fight is over whether Atwater is saved by an exception to this rule.

this standard of review." Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006).

## England Reservation

Thanks to the Supreme Court's England decision, parties forced by a federal judge to litigate their state-law claims in state court can return to federal court and have their federal-law claims heard, free of any preclusive effect of the state-court judgment. What is required is an England reservation. See England, 375 U.S. at 415-21; see also Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 67-68 (1st Cir. 2008). Here is how that works: if a plaintiff has first filed suit in federal court, and if that court orders a Pullman abstention — a type of abstention that, basically, "permits the federal court . . . to ask a state court to clarify a murky question of state law involved in the case" — and if the plaintiff "tell[s] the state court that it wishes to litigate its federal claim" in federal court, then the plaintiff can go back "to the federal forum for determination of the federal question after the state court has decided the" state-law issue, without preclusion principles standing in the way. See Duty Free Shop, Inc. v. Admin. De Terrenos De P.R., 889 F.2d 1181, 1183 (1st Cir. 1989); see also Rivera-Feliciano v. Acevedo-Vila, 438 F.3d 50, 63 (1st Cir. 2006).

Atwater never says that his case fits perfectly within this paradigm. He just thinks that it is close enough. The

district court's closure order, he writes, shared many characteristics of a Pullman-abstention order — it stopped all federal-court proceedings and effectively relegated him to state court, though it permitted any party to move to reopen the case after state-court proceedings ended. Functionally, the closure order is nearly indistinguishable from a Pullman abstention order — or so he asserts.

Close enough counts with horseshoes and hand grenades but not with England reservations. The right to reserve claims arises only when the district court abstains under Pullman. See, e.g., Geiger, 521 F.3d at 67-68 (citing San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal., 545 U.S. 323, 339 (2005), and Duty Free Shop, Inc., 889 F.2d at 1183). And the simple truth is that the district court's closure order is not a Pullman-abstention order. Sure, the parties jointly requested that the court enter a "Pullman" stay. But the district court took a different tack. The court spent no time checking whether "substantial uncertainty exists over the meaning of the state law in question" or whether resolving the state-law question "will or may well obviate the need to resolve a significant federal constitutional question" — both of which are essential Pullman prerequisites. Batterman v. Leahy, 544 F.3d 370, 373 (1st Cir. 2008) (emphasis added). "Rather," as the court later explained, it "assumed that, like many similarly situated plaintiffs, Atwater had chosen to proceed first in [state

-10-

court] because he thought he had a greater likelihood of success there."  And the reason behind the court's "order of closure for statistical purposes" — which is what the court called it — practically leaps off the printed page of that document:  "to avoid the necessity of counsel to appear at periodic status conferences, or file status reports . . . ."  Certainly this is not the stuff of a Pullman abstention.  See generally Duty Free Shop, Inc., 889 F.2d at 1183 (holding that "England, and its reservations, are not relevant . . . where the purpose of the abstention is not clarification of state law").

If that were not enough to sink Atwater's England-reservation argument — and it most assuredly is — there is also this.  Under our caselaw, litigants must first file suit in federal court to secure an England reservation.  See, e.g., Barreto-Rosa v. Varona-Mendez, 470 F.3d 42, 47 (1st Cir. 2006) (citing Allen v. McCurry, 449 U.S. 90, 101 n.17 (1980), and Partido Nuevo Progresista v. Perez, 639 F.2d 825, 826 n.2 (1st Cir. 1980)) (noting that, "for an England reservation to be effective, a plaintiff must initially file suit in federal court and have the district court abstain from hearing the case pending resolution of the state claims in state court"); Duty Free Shop, Inc., 889 F.2d at 1183 (explaining that England "permits a plaintiff who files a case in federal court before state proceedings begin to tell the state court that it wishes to litigate its federal claim in that

-11-

<u>federal</u> court"); <u>Fuller Co.</u> v. <u>Ramon I. Gil, Inc.</u>, 782 F.2d 306, 312 (1st Cir. 1986) (stressing that "to make an <u>England</u> reservation, a litigant must establish its right to have its federal claims adjudicated in a federal forum by properly invoking the jurisdiction of the federal court in the first instance"). Atwater filed suit in state court first, which undoes his <u>England</u>-reservation theory.

## State-Court Reservations

Even putting <u>England</u> aside, Atwater thinks that he should still win. His argument goes something like this: Massachusetts takes the view that plaintiffs can split claims among different suits (something the res-judicata rule normally forbids) if "the court in the earlier action expressly reserves [plaintiffs'] right to bring those claims in a later action." <u>Perroncello</u> v. <u>Donahue</u>, 835 N.E.2d 256, 261 (Mass. App. Ct. 2005), <u>rev'd on other grounds</u>, 859 N.E.2d 827 (Mass. 2007).[4] The key being an express reservation. Or the lack of it. Anyway, trying to squeeze himself within this narrow exception, Atwater points to the state-court footnotes discussed above as proof that the state forum approved his claim splitting — meaning, the argument continues, that the

---

[4] <u>Perroncello</u> relied on, among other sources, section 26(1)(b) of the Restatement (Second) of Judgments, which from here on we refer to simply as the "Restatement."

state-court judgment can have no preclusive effect vis-à-vis the federal claims.[5]

But devastating to his position, Atwater points to nothing that remotely suggests that this is what the state courts had in mind when they penned these fleeting passages. For our part, we see no clue in the record that he ever asked the state courts to say that the state-court judgment has zero preclusive effect on the federal claims. And the opinions themselves reveal no whisper of a hint of an intimation that the state courts had anything to say on that subject: neither court tossed around words like "res judicata" or "claim preclusion," and neither cited — let alone discussed — any authority touching on a state court's ability to reserve a litigant's right to maintain a further federal-court suit, free of certain res-judicata concerns. That speaks volumes.

In law, as in life, context matters. And taken in their proper context, the state-court footnotes are simply descriptions of what Atwater said he had done regarding his federal-law claims, not sign-offs on the effect of his actions — and certainly not rulings that the state-court judgment carries no preclusive effect

---

[5] For those who do not remember, the state-trial court wrote that Atwater had alleged three federal-law claims, on top of his three state-law claims, and had "expressly reserved" his federal-law claims "for adjudication" in federal court. And the SJC wrote that Atwater had "also raised three [f]ederal claims" that "he has reserved for adjudication" in federal court, and "[t]hus these claims are not before us." Atwater, 957 N.E.2d at 1067 n.7.

-13-

in this instance.  Consequently, his footnote-based argument has no traction.

Not so fast, Atwater says.  Clinging to our opinion in Thomas v. Contoocook Valley School District, 150 F.3d 31 (1st Cir. 1998), and the Ninth Circuit's opinion in Dodd v. Hood River County, 59 F.3d 852 (9th Cir. 1995), he still believes that he holds a winning hand.  Neither decision helps him, however, not even a little bit.

As for Thomas, in that case a school board in New Hampshire had made two findings concerning a school's decision not to renew teacher Thomas's contract:  first, Thomas had performed her job poorly, and second, her health issues had "'no direct bearing' on her nonrenewal."  150 F.3d at 35.  On administrative appeal, a state agency upheld the poor-performance finding but said her health concerns were a factor in the school's decision, adding (and this is what matters for our purposes) whether the school's action infracted state-discrimination laws "'is a fact-sensitive question best left'" to another tribunal before which Thomas had a pending discrimination claim.  Id. at 37.  The New Hampshire Supreme Court later affirmed, and eventually Thomas's discrimination claim found its way to federal court.  Id. Relying on section 26(1)(b) of the Restatement, we saw "no other interpretation of the [agency's] decision but as an express reservation of Thomas's discrimination claim for further

-14-

adjudication" — a reservation the New Hampshire Supreme Court "did not disturb," we noted, which meant that "res judicata did not apply." Id. at 43. Of course, there we were interpreting New Hampshire law, not Massachusetts law, which is a blow to Atwater's argument. Also unfortunately for him, nothing resembling the type of express reservation in Thomas is evident here.

As for Dodd, the Ninth Circuit did say that "[a] court may be able to reserve part of a plaintiff's claim for subsequent litigation by expressly omitting any decision with regard to it in the first judgment." 59 F.3d at 862 (emphasis added) (concluding "that the Oregon courts sufficiently reserved" plaintiff's federal claims "by repeatedly acknowledging" that those "claims were not before them and were pending in the federal district court"). The Ninth Circuit was applying Oregon law, which finds a reservation express under section 26(1)(b) of the Restatement if a litigant insists that he has reserved his federal claims for decision in federal court and the state court then does not address those claims. 59 F.3d at 862.

The Restatement's section 26(1)(b) is an exception to the general rule against claim splitting set out in section 24(1). The rule (section 24(1)): a "claim" for preclusion-analysis purposes "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

The exception (section 26(1)(b)):  "the general rule . . . does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant" if "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action."  What Atwater wants us to do is hold that Massachusetts would — like Oregon, apparently — read the phrase "expressly reserved" broadly to include situations where a court acknowledges a plaintiff's attempt to reserve a claim and consciously decides not to address that claim.  But doing so would require us to expand Massachusetts law in a way that we cannot.  See, e.g., Katz v. Pershing, LLC, 672 F.3d 64, 73-74 (1st Cir. 2012) (quoting Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391, 402 (1st Cir. 2005) (explaining that "we — as federal judges sitting in diversity jurisdiction — 'cannot be expected to create new doctrines expanding state law'").  Given the lack of any Massachusetts caselaw reading section 26(1)(b) as expansively as Atwater would like and the restraints imposed on us when dealing with diversity cases (not to mention what we said in Thomas), we decline to hold that Massachusetts would treat the situation presented here as an effective reservation of Atwater's federal-law claims.

Two classes of arguments down, one to go.

## Equitable Discretion

Citing Massachusetts caselaw intimating that equitable concepts like fairness play a role in applying res-judicata principles, see, e.g., Donahue v. Draper, 491 N.E.2d 260, 269 n.22 (Mass. App. Ct. 1986), Atwater insists that the equities favor allowing his federal claims to proceed. He arguably waived this idea by floating it in a footnote in his opening brief, with little helpful analysis. See, e.g., Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("deem[ing] waived claims . . . adverted to in a cursory fashion, unaccompanied by developed argument"). But even if the idea were preserved, there is nothing inequitable about applying res judicata here — particularly since Atwater forged ahead with his claim-splitting stratagem despite the fact that (a) his opponents contested his right to do so at every turn, a tip-off that they would call on preclusion principles to dash his litigation hopes, and that (b) neither state court ever expressly declared that its judgment had no preclusive effect on his federal-law claims, a tip-off that he would get no help from section 26(1)(b) of the Restatement.

## CONCLUSION

Having found no reason to disturb the district court's ruling, we uphold the entry of summary judgment for the Commissioner and the School District.

**Affirmed, with the Commissioner and the School District awarded their costs on appeal**.

-17-